[Cite as *State v. Dudas*, 2014-Ohio-4292.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2013-L-048 and 2013-L-049** |
| RONALD DUDAS, | : | |
| Defendant-Appellant. | : | |

Civil Appeals from the Lake County Court of Common Pleas, Case Nos. 06 CR 000560 and 06 CR 000700.

Judgment: Affirmed.

*Timothy J. McGinty,* Cuyahoga County Prosecuting Attorney, and *Daniel J. Kasaris,* Assistant Prosecuting Attorney, Justice Center, 1200 Ontario Street, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Ronald Dudas, appeals the judgment of the Lake County Court of Common Pleas denying his motion to withdraw his guilty plea/petition for post-conviction relief. Appellant was convicted, following his guilty plea, of intimidation of and retaliation against a Cuyahoga County Common Pleas Court Judge, intimidation of a North Olmsted police officer, and engaging in a pattern of corrupt activity involving the theft of money and real estate from numerous victims. This is appellant's fifth post-

sentence motion to withdraw his guilty plea and his second petition for post-conviction relief. Further, this is the fifteenth appeal appellant has filed following the denial by the trial court of motions collaterally attacking his conviction. At issue is whether appellant's present motion to withdraw/petition for post-conviction relief is barred by res judicata. For the reasons that follow, we affirm.

{¶2} The following established facts are derived from this court's opinions in appellant's previous appeals. On October 19, 2005, Cuyahoga County Common Pleas Judge David T. Matia sentenced appellant on an unrelated case to 17 months in prison on his guilty plea to felony theft and for a probation violation.

{¶3} Immediately after appellant was taken by sheriff's deputies to the Cuyahoga County Jail, he started making collect telephone calls to his girlfriend Jennifer Bost discussing his sentencing. On October 19, 2005, he told her he was "gonna visit [North Olmsted Police Detective Simon Cesareo] when "I'm out of here." He said, "I want [Detective Cesareo] sodomized." This detective had investigated many of the fraud cases over the past ten years that had resulted in convictions against appellant.

{¶4} On October 21, 2005, appellant called Ms. Bost again. While discussing his sentence with her, he said he "was gonna take that gun from the deputy and shoot the fucker [Judge Matia] in the head."

{¶5} Between October 19, 2005 and October 21, 2005, appellant also discussed his sentencing with some of his fellow inmates. He told inmate Daniel Whitehead that because Judge Matia gave him almost the maximum sentence, he took it personally and wanted Judge Matia to be killed and wanted Detective Cesareo to be hurt. He offered to pay Whitehead $10,000 to accomplish this, but Whitehead declined.

2

{¶6} On October 22, 2005, appellant told his fellow inmate Robert Harmon he hated Judge Matia and wanted him killed and wanted Detective Cesareo's legs broken. Appellant told Harmon he would pay him $500 now, $5,000 when Harmon got out of jail, and a final $5,000 when Harmon had done it. Harmon contacted Cleveland Police Homicide Detective Hank Veverka and told him about appellant's proposition. Harmon agreed to wear a recording device. On October 25, 2005, appellant again discussed the murder plot with Harmon, only this time the conversation was tape-recorded. Appellant told Harmon how he would get the money; that he guaranteed Harmon he would be paid; and that he wanted both jobs done, referring to Judge Matia and Detective Cesareo.

{¶7} On or about November 20, 2005, appellant contacted Tom Platzer, one of his theft victims, and convinced him to give $300 to Harmon, which appellant meant to serve as the initial deposit for Harmon's role in the murder plot. Platzer paid the money to a detective posing as Harmon.

{¶8} On November 23, 2005, appellant called Ms. Bost and told her he had gotten in trouble in the past with a note he had written and this time he had done "the reverse." He said he had gone to Harmon's cell and found a prescription for his medication. Appellant took the prescription and wrote a note on the back stating, "I, Robert Harmon, hereby state that I falsely tried to set up Ronald Dudas to enhance myself. I have told several lies to detectives about Ron Dudas. I sign this note because I was wrong for what I did." The note was dated November 23, 2005, and bore the purported signature of Harmon. Appellant said this was his protection in the event Harmon turned out to be an informant. Appellant mailed this note to Ms. Bost, and told

3

her with this he had the upper hand. Detectives turned the note over to the Lake County Crime Lab, which determined that appellant himself had written the note and that Harmon's signature on the note was a forgery.

{¶9}   On April 18, 2006, appellant was indicted by the Cuyahoga County Grand Jury and charged with 14 counts of intimidation, 15 counts of retaliation, two counts of conspiracy to commit aggravated murder, attempted aggravated murder, and attempted felonious assault on a police officer ("the murder conspiracy case").

{¶10}  Meanwhile, between June 2000 and April 2002, appellant formed and carried on an enterprise for the ostensible purpose of providing loans to individuals in dire financial straits, but with the true purpose of stealing their funds and real estate. Appellant employed various schemes to accomplish this objective. Many of appellant's victims were near foreclosure, and appellant took advantage of their plight by stealing the last of their assets. Appellant recruited associates to act as straw borrowers and purchasers, and created spurious mortgages and loan documents to obtain loans from lenders.  He then stole the proceeds from these loans.

{¶11}  Pursuant to this enterprise, appellant forged signatures on conveyance instruments and mortgages and falsified loan applications in order to obtain loans. He prepared and filed fraudulent mechanics' liens against properties, and falsified documents that allowed him to collect on them. He stole in excess of one million dollars from multiple victims. The indictment listed 35 victims. He stole more than $100,000 apiece from 14 separate victims.

{¶12}  Appellant would often convince victims, many of whom were elderly, to give him their money so he could "invest" it.  He would then steal the funds.  When

4

these victims later wanted their money back, he would purport to transfer properties to them in exchange, but he never recorded the deeds. On other occasions, as part of the loan application process, appellant would have the victims quitclaim their properties to him. He then sold the properties and kept the sales proceeds.

{¶13} On September 26, 2006, appellant was indicted by the Cuyahoga County Grand Jury in a 135-count indictment for engaging in a pattern of corrupt activity, 30 counts of tampering with records, 10 counts of securing writings by deception, six counts of telecommunications fraud, 46 counts of forgery, 35 counts of theft by deception, theft beyond the scope of the owner's consent, and six counts of money laundering ("the corrupt activity case").

{¶14} On the authority of the Ohio Supreme Court, former Administrative Judge Nancy McDonnell of the Cuyahoga County Common Pleas Court assigned appellant's cases to Lake County Common Pleas Judge Eugene Lucci to be heard in Cuyahoga County. After the assignment, appellant filed a motion for change of venue, arguing that he could not receive a fair trial in Cuyahoga County due to pre-trial publicity. Judge Lucci granted appellant's motion on August 24, 2006, and transferred his cases to Lake County.

{¶15} The jury trial in the murder conspiracy case began on October 17, 2006. The prosecutor gave his opening statement, and several key witnesses, including Judge Matia and Detective Cesareo, testified. Then, after two days of trial, on October 19, 2006, appellant plead guilty in both cases, which were consolidated in the trial court. In "the murder conspiracy case," appellant pled guilty to four counts of intimidation of Detective Cesareo and Judge Matia, and one count of retaliation against Judge Matia.

In Case No. 06 CR 000700, "the corrupt activity case," appellant pled guilty to engaging in a pattern of corrupt activity, tampering with records, forgery, felony theft, uttering, securing writings by deception, and telecommunications fraud.

{¶16} The matter was set for sentencing on December 1, 2006 at 9:00 a.m. Earlier that morning, although represented by counsel, appellant filed a pro se motion to withdraw his guilty plea. When the trial court brought this motion to defense counsel's attention, counsel stated, "we're gonna withdraw that motion. I'm gonna withdraw it on behalf of the Defendant. So we don't have to have a hearing on it and be heard. We'll withdraw the motion to withdraw the plea." When asked by the court if he agreed with his attorney's remarks, appellant said he did.

{¶17} Judge Matia attended appellant's sentencing hearing and spoke as a victim. He advised the court that in sentencing appellant in the past, he had become familiar with his extensive criminal record, and advised the court that appellant's life work has been to defraud and steal.

{¶18} Judge Matia said appellant actually had funds delivered to the person he believed would kill him; however, the funds were delivered to a detective and not, as appellant intended, to a real hit man.

{¶19} Judge Matia told the court that in 1995, appellant became angry with then-Cuyahoga County Common Pleas Judge Timothy McGinty, the current Cuyahoga County Prosecutor, due to remarks Judge McGinty made while sentencing appellant's then-girlfriend, Attorney Patricia Boychuk, on criminal charges she faced in his court. Appellant tracked down the Judge to a health club where the Judge works out in downtown Cleveland. Appellant joined the club so he could get near to the Judge.

6

While Judge McGinty was using the bench press, appellant suddenly appeared over him and grabbed the bar Judge McGinty was using, attempting to harass and intimidate him.

{¶20} Several of appellant's other victims also spoke at the sentencing. They described how they and their families had been destroyed financially and emotionally by appellant. Their credit was ruined and many were forced into bankruptcy.

{¶21} The prosecutor told the court that in the case of *Cuyahoga County Bar Association v. Boychuk*, 79 Ohio St.3d 93 (1997), the Supreme Court of Ohio suspended Attorney Patricia Boychuk's license to practice law. She had been appellant's girlfriend. The Board of Commissioners on Grievances and Discipline of the Supreme Court found that she was a battered woman and that appellant had battered her. The Board found that Boychuk was addicted to cocaine and that appellant had supplied the drug to her. Beginning in 1992, appellant took over her law practice without her knowledge. Appellant falsely held himself out as an attorney and accepted fees to perform legal work for Boychuk's clients.

{¶22} The prosecutor said that while appellant was on probation from Cuyahoga County Common Pleas Judge Richard McMonagle for the unauthorized practice of law and theft in 2001, he stole money or the homes of 21 separate victims.

{¶23} During his sentencing, when given an opportunity to speak, appellant did not deny the statements of any of his victims in either the murder conspiracy case or the corrupt activity case. Instead, he told the court, "Whatever you tell me I have to do, whether it's 1 years [sic] or 100 years, Your Honor, I'm gonna do that. Because I owe it to these people, I owe it to this community and I owe it most to my family."

{¶24} The trial court noted appellant was convicted of theft in Lyndhurst in 1979. In 1987, he was convicted of three counts of theft in the Willoughby Municipal Court. In 1992, appellant plead guilty to theft in the Lake County Common Pleas Court.

{¶25} In 1995, appellant plead guilty in the Cuyahoga County Common Pleas Court to multiple felony theft counts. Appellant was sentenced by Judge Thomas Patrick Curran to one year in prison. While appellant was in prison, he filed a pro se motion for shock probation. Judge Curran denied the motion, and appellant decided to seek revenge against the Judge. Appellant solicited fellow inmate Daniel Ott to break Judge Curran's hand and offered Ott $2,500 to do it. Ott contacted Detective Thomas Doyle of the Eastlake Police Department and advised him of appellant's efforts to injure Judge Curran. Appellant was found guilty by a jury of intimidation against Judge Curran and sentenced to two years in prison.

{¶26} In 2001, appellant was convicted of the unauthorized practice of law in the Cuyahoga County Common Pleas Court.

{¶27} In 2004, appellant was convicted of a theft he committed in North Olmsted. He was put on probation by Judge Matia. Appellant's probation was later terminated due to a new offense he committed in North Olmsted in 2005. Judge Matia sentenced him to 17 months in prison for that offense and a probation violation. It was in response to that sentence that appellant plotted to murder Judge Matia.

{¶28} Following appellant's sentencing hearing on December 1, 2006, in the murder conspiracy case, the court sentenced appellant on each of four counts of intimidation to five years in prison, each term to run concurrently to the others. The

8

court also sentenced him to five years on the retaliation count, to be served consecutively with the intimidation counts, for a total of ten years.

{¶29} In the corrupt activity case, the court sentenced appellant to ten years for engaging in a pattern of corrupt activity, five years for tampering with records, 18 months for forgery, one year for theft, 18 months for uttering, five years for securing writings by deception, and 18 months for telecommunications fraud. The prison terms imposed for forgery, theft, uttering, and telecommunications fraud were to be served concurrently to each other and concurrently to the terms imposed for engaging in a pattern of corrupt activity, tampering with records, and securing writings by deception. The terms for engaging in a pattern of corrupt activity, tampering with records, and securing writings by deception were to be served consecutively to each other, for a total of 20 years in prison, and consecutively to the prison term in the murder conspiracy case, for a grand total of 30 years in prison.

{¶30} Appellant filed a direct appeal and this court affirmed his conviction in *State v. Dudas*, 11th Dist. Lake Nos. 2006-L-267 and 2006-L-268, 2007-Ohio-6739, *discretionary appeal not allowed at* 118 Ohio St.3d 1409, 2008-Ohio-2340 ("*Dudas I*").

{¶31} Following appellant's sentence, he filed multiple pro se motions and appealed their denial by the trial court. In *State v. Dudas*, 11th Dist. Lake No. 2007-L-074, 2007-Ohio-6731 ("*Dudas II*"), this court affirmed the trial court's denial of appellant's motion to require the state to return his laptop computer and his personal and business files.

{¶32} In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-140 and 2007-L-141, 2008-Ohio-3262 ("*Dudas III*"), this court affirmed the trial court's dismissal of appellant's first petition for postconviction relief.

{¶33} In *State v. Dudas*, 11th Dist. Lake No. 2007-L-169, 2008-Ohio-3261 ("*Dudas IV*"), this court affirmed the trial court's denial of appellant's motion to compel two victims of his theft scheme to return his property.

{¶34} In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-170 and 2007-L-171, 2008-Ohio-3260 ("*Dudas V*"), this court affirmed the trial court's denial of appellant's Civ.R. 60 motion for relief from judgment.

{¶35} In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-081 and 2008-L-082, 2008-Ohio-7043 ("*Dudas VI*"), this court affirmed the trial court's denial of appellant's first motion to withdraw his guilty plea.

{¶36} In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-189 and 2007-L-190, 2008-Ohio-6983 ("*Dudas VII*"), this court affirmed the trial court's denial of appellant's petition to return all seized contraband from law enforcement officials.

{¶37} In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-078 and 2008-L-079, 2009-Ohio-1003 ("*Dudas VIII*"), this court affirmed the trial court's denial of appellant's request for production of documents pursuant to Civ.R. 34 and his "investigative demand against state."

{¶38} In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109 and 2008-L-110, 2009-Ohio-1001 ("*Dudas IX*"), this court affirmed the trial court's denial of appellant's motion to quash the indictment.

10

{¶39} In *State v. Dudas*, 11th Dist. Lake Nos. 2009-L-072 and 2009-L-073, 2010-Ohio-3253 ("*Dudas X*"), this court affirmed the trial court's denial of appellant's motion to void judgment and dismiss indictment.

{¶40} In *State v. Dudas*, 11th Dist. Lake No. 2010-L-002, 2010-Ohio-6442 ("*Dudas XI*"), this court affirmed the trial court's denial of appellant's second motion to withdraw his guilty plea.

{¶41} In *State v. Dudas*, 11th Dist. Lake No. 2010-L-003, 2010-Ohio-6576 ("*Dudas XII*"), this court affirmed the trial court's denial of appellant's third motion to withdraw his guilty plea.

{¶42} In *State v. Dudas*, 11th Dist. Lake No. 2010-L-092, 2011-Ohio-4883 ("*Dudas XIII*"), this court affirmed the trial court's denial of appellant's "motion to compel state and trial court to honor legal contract."

{¶43} In *State v. Dudas*, 11th Dist. Lake No. 2011-L-093, 2012-Ohio-2121 and 2011-L-094, 2012-Ohio-2122 ("*Dudas XIV*"), this court affimed the trial court's denial of appellant's fourth motion to withdraw his guilty plea.

{¶44} On March 26, 2013, six years after appellant was sentenced, he filed the instant motion to withdraw his guilty plea/petition for post-conviction relief.

{¶45} In appellant's current motion to withdraw his guilty plea, he argued that Harmon signed an affidavit in 2012, which contained newly discovered evidence, entitling him to withdraw his plea. The so-called new evidence was that Harmon in his affidavit recanted his previous statement implicating appellant in the plot to murder Judge Matia. Appellant argued this new evidence meant his guilty plea was not knowing, intelligent, and voluntary.

11

{¶46} In Harmon's 2012 affidavit, he said that in September 2005, he attended a meeting with Asst. Cuyahoga County Prosecutor Dan Kasaris; Cuyahoga County Common Pleas Judges Timothy McGinty and David Matia; and Cuyahoga County Sheriff's detectives. Harmon said that during this meeting, he was asked to meet with appellant in order to coerce him into making incriminating statements about his involvement in the plan to murder Judge Matia. Harmon was told he would be wired and the conversation taped. Harmon told them he did not believe he could coerce Dudas into making such statements. However, he said that if they would give Daniel Whitehead, another inmate, favorable treatment on his pending charges, he would convince Whitehead to impersonate appellant on tape and make it appear that appellant admitted his involvement in the murder plot. Harmon said that all in attendance agreed to this deception. Harmon said he got Whitehead to agree. Harmon then tape recorded Whitehead giving answers that incriminated appellant, as Harmon coached him to do. Harmon said that appellant never planned to kill Judge Matia and never said he wanted to harm him.

{¶47} The trial court denied appellant's motion. Appellant now appeals the trial court's ruling, asserting six assignments of error. For his first, he alleges:

{¶48} "The trial court erred, as a matter of law, in finding that the affidavit of Robert Harmon submitted in support of appellant's motion was not newly discovered evidence and did not provide substantive grounds for relief."

{¶49} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed * * *; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit a defendant to

12

withdraw his plea." A defendant who seeks to withdraw a guilty plea after sentence has the burden of establishing a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. Under such standard, a post-sentence withdrawal motion is allowable only in extraordinary cases to correct a manifest injustice. *Id.* at 264.

{¶50} "Manifest injustice is determined by examining the totality of the circumstances surrounding the guilty plea. *Paramount in this determination is the trial court's compliance with Crim.R. 11(C), evidence of which must show in the record that the accused understood his rights * * *.*" (Emphasis added.) *State v. Padgett*, 8th Dist. Cuyahoga No. 64846, 1993 Ohio App. LEXIS 3374, *2 (Jul. 1, 1993). In reviewing a trial court's acceptance of a guilty plea, *this court will find the plea to be knowing, intelligent, and voluntary if the trial court substantially complied with Crim.R. 11(C)* as to its non-constitutional elements. *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "A defendant seeking to withdraw a guilty plea following the imposition of sentence bears the burden of establishing manifest injustice * * *." *State v. Jordan*, 10th Dist. Franklin No. 04AP-42, 2004-Ohio-6836, ¶5.

{¶51} The decision whether to grant or deny a post-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. *Smith*, *supra*, at paragraph two of the syllabus. *The good faith, credibility, and weight of the movant's assertions in support of the motion are to be resolved by the trial court.* *Id.* Thus, we review the trial court's denial of a post-sentence motion to withdraw a guilty plea for an abuse of discretion. *State v. Pearson*, 11th Dist. Geauga Nos. 2002-G-2413 and 2002-G-2414, 2003-Ohio-6962, ¶7.

13

**{¶52}** Here, the record supported the trial court's finding that appellant's guilty plea was entered knowingly, voluntarily, and intelligently, and thus no manifest injustice would occur if it was allowed to stand. This court in *Dudas VI* stated:

> **{¶53}** The trial court found that appellant made a knowing, intelligent, and voluntary waiver of his rights; that he understood the nature of the charges to which he pled guilty, the effect of his guilty plea, and the maximum penalty; accepted appellant's guilty plea; and found him guilty of the charges to which he had pled guilty.

> **{¶54}** Based on our thorough and complete review of the record, the trial court scrupulously complied with Crim.R. 11(C), and the record demonstrates appellant's guilty plea was entered voluntarily. *Dudas VI* at ¶57-58.

**{¶55}** Further, it is well settled that a guilty plea is a complete admission of the defendant's factual guilt. *State v. Woodley*, 8th Dist. Cuyahoga No. 83104, 2005-Ohio-4810, ¶12. A counseled guilty plea, voluntarily and knowingly given, removes the issue of factual guilt from the case. *Menna v. New York*, 423 U.S. 61, 62 (1975). Appellant's claim that he was set up challenges his factual guilt, and, as this court held in *Dudas VI*, "such claim has no bearing on the voluntary nature of appellant's guilty plea." *Id.* at ¶36.

**{¶56}** In any event, even if appellant's set-up claim could be asserted following his guilty plea, due to the timing of his current motion, the trial court was entitled to find it was not credible. Appellant fails to give any reason why he waited *one full year* after Harmon signed his 2012 affidavit before appellant submitted it with his present motion.

14

An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion to withdraw is a factor adversely affecting the credibility of the movant and militating against granting the motion. *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3393, ¶14. Appellant's unexplained delay in filing the instant motion one full year after Harmon signed his affidavit weighs heavily against appellant's credibility.

{¶57} Further, the trial court was entitled to find that Harmon's alleged recantation lacked credibility. It is well settled that a witness recantation is looked upon with the utmost suspicion and must be viewed with great scrutiny. *State v. Wyatt*, 12th Dist. Butler No. CA93-03-050, 1994 Ohio App. LEXIS 17, *9 (Jan. 10, 1994). Further, a witness recantation must do more than merely contradict his prior testimony; "there must be some compelling reason to accept a recantation over testimony given at trial." *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶13. Appellant failed to give any such reason for the trial court to accept Harmon's alleged recantation.

{¶58} Appellant concedes the trial court complied with Crim.R. 11 in accepting his guilty plea. He also concedes that when he pled guilty, he was aware of the 2005 note and tape recording. Thus, he was aware of his set-up claim and Harmon's alleged recantation. However, he argues his guilty plea was not knowing, intelligent, and voluntary because, at the time of his plea, he was unaware of the alleged involvement of the prosecutor and the judges in the set up. Appellant has failed to cite any pertinent authority for this proposition, in violation of App.R. 16(A)(7). In any event, the record shows that when appellant pled guilty, he was aware of all material facts surrounding his set-up claim.

15

{**¶59**} Alternatively, a trial court may not consider a second petition for post-conviction relief, such as appellant's, unless he satisfies a two-prong test. He must demonstrate: (1) he was unavoidably prevented from discovering the facts on which his claim was based, and (2) but for constitutional error at trial, no reasonable jury would have found him guilty of the offense. R.C. 2953.23; *State v. Noling*, 11th Dist. Portage No. 2007-P-0034, 2008-Ohio-2394, ¶38. The phrase "unavoidably prevented" implies a defendant was unaware of the facts at issue and was unable to learn of them through reasonable diligence. *Id.* In reviewing a petition for post-conviction relief, a trial court has the discretion to judge the credibility of affidavits. *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). When no hearing is held, we review the trial court's decision to grant or deny a petition for post-conviction relief de novo. *Dudas III* at ¶66.

{**¶60**} The record shows appellant failed to meet the two-prong test of R.C. 2953.23 in order to obtain relief under his successive petition. First, the record shows he was not unavoidably prevented from discovering the information contained in Harmon's 2012 affidavit. In fact, appellant has repeated the same story contained in that affidavit in support of numerous motions he has filed since 2006. The following are but a few examples:

{**¶61**} On December 1, 2006, the day of sentencing, appellant filed a motion to withdraw his guilty plea in which he argued he had proof he was set up by Harmon and Whitehead. However, appellant withdrew that motion before he was sentenced.

{**¶62**} Next, on June 29, 2007, appellant filed his first petition for post-conviction relief in which he argued the 2005 note allegedly written by Harmon proved appellant had been set up and entitled him to vacate his guilty plea.

16

**{¶63}** On August 31, 2007, appellant filed a motion for reconsideration of the trial court's dismissal of his first petition for post-conviction relief. He attached to that motion another affidavit he obtained from Harmon on January 29, 2007. In that affidavit, Harmon said that Whitehead planned to set up appellant. Harmon also said he was used by the prosecutor, Judge Matia, Judge McGinty, and various law enforcement agents to obtain appellant's conviction. Harmon also said he had a meeting with Judge Matia and Judge McGinty for the purpose of setting up appellant. Harmon further said that appellant was innocent of plotting to murder Judge Matia. Thus, in Harmon's 2007 affidavit, he made virtually the same allegations he made in his 2012 affidavit.

**{¶64}** In addition, on April 15, 2008, appellant filed a motion to withdraw his guilty plea. Appellant argued he was set up and attached to his motion both the 2005 note and Harmon's 2007 affidavit.

**{¶65}** Thus, as early as 2005, appellant was aware of the same essential allegations later made by Harmon in both his 2007 affidavit and his 2012 affidavit. As a result, the material facts of appellant's set-up claim were either known by appellant or could have been discovered before his first petition for post-conviction relief, which was filed in June 2007. As such, he was not unavoidably prevented from discovering the information contained in Harmon's 2012 affidavit.

**{¶66}** Further, appellant failed to prove the second prong of the R.C. 2953.23 test, namely, that, but for constitutional error at trial, no reasonable jury would have found him guilty. Appellant did not go to trial and did not prove any constitutional error; instead, he pled guilty. Moreover, during his guilty plea hearing, the following colloquy took place between the court and appellant:

17

**{¶67}** JUDGE LUCCI: And as to the charges that you wish to plead guilty to, the 12, do you agree that those charges accurately and adequately reflect your conduct over [the] period of time covered by the indictment?

**{¶68}** RONALD DUDAS: I believe my culpability's present on those * * *.

**{¶69}** Further, during that same guilty plea hearing, after the prosecutor recited what the state would prove at trial in the murder conspiracy case and in the corrupt activity case, the following exchange took place:

**{¶70}** JUDGE LUCCI: Mr. Dudas, you heard and understand everything the prosecutor just said?

**{¶71}** RONALD DUDAS: Yes, sir.

**{¶72}** JUDGE LUCCI: And is what he said true?

**{¶73}** RONALD DUDAS: It is.

**{¶74}** The evidence thus supported the trial court's finding that appellant failed to meet the test in R.C. 2953.23 and thus was not entitled to post-conviction relief.

**{¶75}** In determining the credibility of appellant's motion/petition, the trial court was entitled to consider that appellant, a career criminal, implicated several highly respected public officials, including a Common Pleas Judge who was the victim of his murder plot, in a set up without one shred of *credible*, independent evidence to corroborate his fantastic story.

**{¶76}** We therefore hold the trial court did not abuse its discretion in denying appellant's fifth post-sentence motion to withdraw his guilty plea. Nor did the court err in denying appellant's second petition for post-conviction relief.

18

{¶77} Appellant's first assignment of error is overruled.

{¶78} For his second assignment of error, appellant alleges:

{¶79} "The trial court erred, both as a matter of law and as an abuse of discretion, by denying the appellant's motions on the basis that such were not timely filed."

{¶80} Appellant misconstrues the trial court's finding that his motion is untimely. That finding relates solely to appellant's petition for post conviction relief, not his motion to withdraw his guilty plea. R.C. 2953.21 provides that a petition for post-conviction relief shall not be filed later than 180 days after the date on which the trial transcript was filed in the court of appeals in the direct appeal. The transcript was filed in appellant's direct appeal on February 23, 2007. Thus, appellant had until August 22, 2007, in which to file such petition. Appellant timely filed his first petition for post-conviction relief on June 29, 2007.

{¶81} R.C. 2953.23 provides that a court may *not* consider a petition filed after the expiration of the foregoing time period *or a second or successive petition* unless (1) the petitioner shows he was *unavoidably prevented* from discovering facts on which he relies to present his claim for relief, and (2) the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted. These are the same elements required for appellant's second petition for post-conviction relief. As discussed above, appellant failed to meet either prong of this test. We therefore hold the trial court did not err in finding that appellant's second petition for post conviction relief was untimely.

19

**{¶82}** Appellant's second assignment of error is overruled.

**{¶83}** For his third assigned error, appellant contends:

**{¶84}** "The trial court erred, as a matter of law, by concluding that the appellant's claims are now barred by the doctrine of res judicata."

**{¶85}** A convicted defendant is precluded under the doctrine of res judicata from raising any defense or claimed lack of due process that was raised or could have been raised by the defendant at trial or on direct appeal. *State v. Szefcyk*, 77 Ohio St.3d 93, 96 (1996).

**{¶86}** Appellant was aware of the essential facts of his set-up claim when he fabricated Harmon's note in November 2005. The fact that additional details were included in the two later affidavits does not avoid the effect of res judicata on his current motion. Based on appellant's knowledge of these facts, which were of record, he could have asserted his claim of set up in the trial court or in his direct appeal, but failed to do so. The following holding of this court in *Dudas III* is equally applicable here:

**{¶87}** Thus, based on the record and the petition, appellant was aware of his claim [ ] based on set up * * * long before he entered his guilty plea. He failed to assert [this] issue in trial or on the direct appeal of his conviction. As a result, [this issue is] barred by res judicata. *Id.* at ¶72.

**{¶88}** Further, appellant asserted his claim of set up in his first post-sentence motion to withdraw his guilty plea, and filed the 2005 note and 2007 Harmon affidavit in support. Res judicata bars the assertion of issues in a successive motion to withdraw a guilty plea that were or could have been raised in the prior motion to withdraw. *State v.*

20

*Gallegos-Martinez*, 5th Dist. Delaware No. 10-CAA-06-0043, 2010-Ohio-6463, ¶12. In addition, appellant asserted his set-up claim in his first petition for post-conviction relief. Res judicata bars claims that were or could have been brought in a first petition for post-conviction relief. *State v. Apanovitch*, 107 Ohio App.3d 82, 86 (8th Dist.1995).

**{¶89}** We therefore hold the trial court did not err in holding that appellant's motion is barred by res judicata.

**{¶90}** Appellant's third assignment of error is overruled.

**{¶91}** For his fourth assignment of error, appellant alleges:

**{¶92}** "The trial court erred and abused its discretion by denying the appellant's motion without a hearing."

**{¶93}** This court has held that "[a] trial court need not hold an evidentiary hearing on a post-sentence motion to withdraw a guilty plea unless the facts as alleged by the defendant suggest a manifest injustice would result if the plea was allowed to stand." *State v. Corradetti*, 11th Dist. Lake No. 2012-L-006, 2012-Ohio-5225, ¶8.

**{¶94}** Alternatively, a petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate *substantive grounds for relief*. *State v. Jackson*, 64 Ohio St.2d 107 (1980). Further, a trial court may dismiss a petition for post-conviction relief without a hearing when the claims raised in the petition are barred by res judicata. *State v. Wright*, 10th Dist. Franklin No. 08AP-1095, 2009-Ohio-4651, ¶11.

**{¶95}** Here, appellant failed to demonstrate manifest injustice or substantive grounds for relief. Moreover, his motion is barred by res judicata. We therefore hold

21

the trial court did not abuse its discretion in denying appellant's motion without a hearing.

{¶96} Appellant's fourth assignment of error is overruled.

{¶97} For his fifth assigned error, appellant contends:

{¶98} "The trial court erred, as a matter of law in finding that it had jurisdiction over Lake County Case No. 06 CR 000700."

{¶99} While appellant concedes the trial court had jurisdiction over his murder conspiracy case, he argues the court lacked jurisdiction over his corrupt activity case because the Ohio Supreme Court did not expressly assign that case to it.

{¶100} As a preliminary matter, we note that on November 15, 2012, appellant filed a motion to void his conviction in the corrupt activity case asserting the identical argument he makes under this assigned error. The trial court denied the motion by its judgment, dated November 26, 2012. Appellant did not appeal this decision.

{¶101} This court has held that where the issue of subject matter jurisdiction has been litigated, the proceedings on that determination are not void and must be challenged by direct appeal. *Citimortgage v. Oates*, 11th Dist. Trumbull No. 2013-T-0011, 2013-Ohio-5077, ¶23, citing *Hughes v. Cz*, 8th Dist. Cuyahoga No. 39148, 1979 Ohio App. LEXIS 10912, *4-*5 (Jul 19, 1979). Thereafter, the trial court's ruling on the jurisdictional question is binding under res judicata. *Oates*, *supra*, at ¶22.

{¶102} Because appellant failed to appeal the trial court's finding that it had jurisdiction of the corrupt activity case, this assignment of error is barred by res judicata.

{¶103} In any event, by journal entry, dated June 9, 2006, former Administrative Judge Nancy McDonnell of the Cuyahoga County Court of Common Pleas assigned

22

Judge Lucci "to hear cases involving State of Ohio v. Ronald Dudas and to conclude any proceedings in which he participated. Per memo from Chief Justice Thomas J. Moyer."

{¶104} After the case was assigned to Judge Lucci, appellant moved for a change of venue. Judge Lucci granted appellant's motion by order, dated August 22, 2006, transferring appellant's cases to Lake County. That order stated that "Defendant Dudas has requested *all of his cases* be transferred to Lake County, Ohio * * *." (Emphasis added.) Thereafter, Judge Lucci signed another order, dated October 13, 2006, in which he ordered that the corrupt activity case be transferred to Lake County. On October 17, 2006, Judge McDonnell signed a separate journal entry expressly transferring the corrupt activity case to the Lake County Court of Common Pleas.

{¶105} Further, Judge Lucci as a Common Pleas Judge had statewide jurisdiction to hold court in any county. *State v. Dulaney*, 3d Dist. Paulding No. 11-12-04, 2013-Ohio-3985, ¶13, citing Ohio Constit. IV Sec. 14 ("Any judge of a court of common pleas * * * may temporarily hold court in any county.") This constitutional provision is self-executing and under it a common pleas judge has authority to preside in every county in Ohio. *State v. Powers*, 98 Ohio App. 365, 369 (12th Dist.1954). "A Common Pleas judge presiding in a county other than the one in which he was elected or appointed acts in a de jure capacity, *even though he has not been assigned thereto by the Chief Justice.*" (Emphasis added.) *Id.* at 370.

{¶106} We therefore hold the trial court did not err in finding it had jurisdiction of the corrupt activity case.

{¶107} Appellant's fifth assignment of error is overruled.

23

{¶108} For his sixth and final assigned error, appellant alleges:

{¶109} "The trial court erred, as a matter of law, by prohibiting the appellant from making future pro se filings."

{¶110} The trial court in its judgment outlined the extensive history of appellant's repetitious, unsubstantiated, frivolous, and/or bad faith motions, and advised appellant that if he filed any further similar motions, the court would strike such filings from the record. Further, the court stated that if appellant retains counsel to file further motions of this sort, appellant shall disclose this order to counsel and require counsel to familiarize himself with the entire record and all rulings at the trial court, appellate, and Supreme Court levels. The court also cautioned counsel that the filing of any repetitious, unsubstantiated, frivolous, and/or bad faith motions will result in disciplinary and/or contempt sanctions.

{¶111} Appellant argues the trial court erred in issuing this order because the court thereby prohibited appellant from making any future pro se filings whatsoever without giving him any conditions. However, this argument ignores the actual language of the court's order. The court did not prohibit appellant from making any future pro se filings. To the contrary, it merely ordered him not to file any more repetitious, unsubstantiated, frivolous, and/or bad faith motions.

{¶112} While appellant has the right to access the courts of this state, "[t]his right of access * * * does not include the right to abuse the judicial processes and we believe it is within the inherent authority of this court to prevent such abuses * * *." *State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs.*, 100 Ohio App.3d 592, 600 (8th Dist.1995).

{¶113} Further, in light of appellant's history of frivolous filings, the trial court had the authority to caution attorneys representing him to refrain from involving themselves in such activity. The Supreme Court of Ohio in *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256 (1987), held that "[a] trial court has the 'inherent power to regulate the practice before it and protect the integrity of its proceedings * * *' including the 'authority and duty to see to the ethical conduct of attorneys * * *.'" *Id.* at 259, quoting *Royal Indemnity Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 33-34 (1986).

{¶114} We therefore hold the trial court did not err in entering the order challenged by appellant.

{¶115} Appellant's sixth assignment of error is overruled.

{¶116} For the reasons stated in this opinion, the assignments of error lack merit and the same are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶117} I respectfully dissent.

{¶118} Appellant is serving a 30 year prison sentence for various charges, including intimidation of and retaliation against a Cuyahoga County Common Pleas Court Judge, intimidation of a North Olmsted police officer, and engaging in a pattern of

25

corrupt activity involving the theft of money and real estate from various victims. The record reveals appellant was persuaded by his trial counsel to enter guilty pleas. Appellant was primarily concerned about Mr. Harmon's testimony and the audio tape that was made and which allegedly implicated him in the crimes. Since appellant had no witnesses to directly rebut the testimony and the tape, and since he received no discovery materials, he opted to take the plea offer. Almost immediately, however, appellant began challenging his guilty plea.

{¶119} Appellant still denies guilt with respect to all charges. Thus, appellant is pleading actual innocence which should never be ignored. Presently before this court is appellant's motion to withdraw his guilty plea/petition for post-conviction relief. This writer notes that actual innocence claims may be properly raised in a post-conviction motion. *State v. Byrd*, 145 Ohio App.3d 318, 330-331 (1st Dist.2001).

{¶120} Appellant makes a legitimate assertion which should not be discounted given how serious the charges are in this case. In fact, appellant points to newly discovered evidence supporting his claim. Specifically, appellant argues that Mr. Harmon signed an affidavit in 2012, which contained newly discovered evidence. In that affidavit, Mr. Harmon recanted his previous statement implicating appellant in the plot to murder Judge Matia. This evidence supports appellant's claim that his guilty plea was not knowing, intelligent, and voluntary as it relied on fake or perjured testimony.

{¶121} In addition, other affidavits further support appellant's claim, including: (1) the affidavit of Mr. Holbert indicating that Mr. Whitehead had personally discussed with him the need to fabricate a tape concerning appellant while the witness and Mr. Whitehead were both incarcerated in Cuyahoga County; (2) the affidavit of Mr. Collins

26

wherein this witness also discussed the matter with Mr. Whitehead including Mr. Whitehead's participation in the conspiracy by acting as the voice of appellant on the tape; and (3) the affidavit of Ms. Justice, appellant's sister, indicating the pressure that was placed on her brother to enter the guilty pleas now in question.

{¶122} The foregoing evidence buoys appellant's actual innocence claim. Such evidence may not be discredited on its face. *State v. Green*, 7th Dist. Mahoning No. 05 MA 116, 2006-Ohio-3097, ¶26, citing *State v. Wright*, 67 Ohio App.3d 827, 831 (2d Dist.1990). Appellant must be afforded a hearing on this issue. *Green* at ¶26, citing *Wright* at 831-832.

{¶123} In the interests of justice, when inconsistencies are presented and cast legitimate clouds as to the evidence or procedures used to convict defendants, a hearing on the evidence is warranted. Stated differently, an hour's time of the court in order to validate the underlying correctness of a defendant's conviction serves the justice system. Based on the facts presented, it behooves our justice system to afford appellant a hearing. I believe we owe it not only to appellant to insure he is rightfully convicted of the crimes, but to the taxpayers as well who are paying for appellant's prison sentence for the next 30 years as it costs over $23,000 per year to house each inmate in Ohio.

{¶124} Ohio courts have an independent obligation to get it right. It is noteworthy to point out an article recently published in the March/April 2014 Ohio State Bar Association Member Magazine, *Ohio Lawyer*, Volume 28, No. 2. According to that article, which cited to exonerationregistery.org, last year broke a record in the American justice system by producing the highest number of exonerations ever recorded – 87.

27

Nearly one-third (27) of the 87 exonerations in 2013 revealed that no crime ever actually occurred. Modern technology and increased communication allow and validate post-conviction inconsistencies to be exposed.

{¶125} Based on the foregoing, I believe that appellant has established, at the very least, an entitlement to an evidentiary hearing on his motion, and that the trial court, in failing to conduct such a hearing, committed error.

{¶126} For the foregoing reasons, I would reverse the trial court's judgment denying appellant's motion to withdraw his guilty plea/petition for post-conviction relief and remand the matter for the court to determine the merits of his motion to withdraw.

{¶127} I respectfully dissent.