[Cite as *State v. Dudas*, 2022-Ohio-1637.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2021-L-115** |
| | **2021-L-116** |
| Plaintiff-Appellee, | |
| | Criminal Appeals from the |
| - v - | Court of Common Pleas |
| | |
| RONALD DUDAS, | |
| | Trial Court Nos. 2006 CR 000560 |
| Defendant-Appellant. | 2006 CR 000700 |

**O P I N I O N**

Decided: May 16, 2022
Judgment: Affirmed

*Michael C. O'Malley,* Cuyahoga County Prosecutor, and *Brandon A. Piteo,* Assistant Prosecuting Attorney, The Justice Center, 8th Floor, 1200 Ontario Street, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Ronald Dudas,* pro se, PID# A520-261, Grafton Correctional Institution, 2500 South Avon Belden Road, Grafton, OH 44044 (Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, Ronald Dudas, appeals from the October 19, 2021 order of the Lake County Court of Common Pleas striking his Jus Necessitatis Motion Due to Sixth Amendment and Brady Violations.  In 2006, appellant pled guilty to and was convicted of, inter alia, intimidation of and retaliation against a Cuyahoga County Common Pleas Court judge, intimidation of a police officer, and engaging in a pattern of corrupt activity involving the theft of money and real estate from numerous victims.  This is the nineteenth appeal that appellant has filed relating to two consolidated 2006 convictions, and specifically, his

third petition for post-conviction relief based on purported fraud. For the reasons set forth herein, the order of the Lake County Court of Common Pleas is affirmed.

{¶2} The following factual background is derived from this court's opinions in previous appeals. On October 19, 2005, Cuyahoga County Common Pleas Judge David T. Matia sentenced appellant on an unrelated case to 17 months in prison on his guilty plea to felony theft and for a probation violation.

{¶3} After sentencing, appellant was taken to jail, and he started making calls to his then-girlfriend discussing sentencing. On October 19, 2005, he told her he was "gonna visit [North Olmsted Police Detective Simon Cesareo] when 'I'm out of here.'" He also said he wanted Detective Cesareo, who had investigated many of the fraud cases over the past ten years that had resulted in convictions against appellant, sodomized. On October 21, 2005, appellant said he "was gonna take that gun from the deputy and shoot the fucker [Judge Matia] in the head."

{¶4} Appellant also discussed his sentencing with some of his fellow inmates. He told inmate Daniel Whitehead that because Judge Matia gave him almost the maximum sentence, he took it personally, wanted Judge Matia to be killed, and wanted Detective Cesareo to be hurt. He offered to pay Whitehead $10,000 to accomplish this, but Whitehead declined.

{¶5} Appellant also told his fellow inmate Robert Harmon he hated Judge Matia and wanted him killed and wanted Detective Cesareo's legs broken. Appellant told Harmon he would pay him $500 now, $5,000 when Harmon got out of jail, and a final $5,000 when Harmon had done it. Harmon contacted Cleveland Police Homicide Detective Hank Veverka and told him about appellant's proposition. Harmon agreed to

2

wear a recording device. On October 25, 2005, appellant again discussed the murder plot with Harmon, while the conversation was tape-recorded. Appellant told Harmon how he would get the money; that he guaranteed Harmon he would be paid; and that he wanted both jobs done, referring to Judge Matia and Detective Cesareo.

{¶6} Just about a month later, appellant contacted Tom Platzer, one of his theft victims, and convinced him to give $300 to Harmon, which appellant meant to serve as the initial deposit for Harmon's role in the murder plot. Platzer paid the money to a detective posing as Harmon.

{¶7} Appellant subsequently called his then-girlfriend and told her he had gone to Harmon's cell, found a prescription for his medication, and wrote a note on the back stating, "I, Robert Harmon, hereby state that I falsely tried to set up Ronald Dudas to enhance myself. I have told several lies to detectives about Ron Dudas. I sign this note because I was wrong for what I did." The note was dated November 23, 2005 and bore the purported signature of Harmon. Appellant said this was his protection in the event Harmon turned out to be an informant. Appellant mailed this note to his then-girlfriend and told her with this he had the upper hand. The Lake County Crime Lab eventually determined that appellant himself had written the note and that Harmon's signature on the note was a forgery.

{¶8} On April 18, 2006, appellant was indicted by the Cuyahoga County Grand Jury in Case No. 09 CR 000560 and charged with 14 counts of intimidation, 15 counts of retaliation, two counts of conspiracy to commit aggravated murder, attempted aggravated murder, and attempted felonious assault on a police officer ("the murder conspiracy case").

3

{¶9} On September 26, 2006, appellant was indicted by the Cuyahoga County Grand Jury in Case No. 06 CR 000700 and charged, in a 135-count indictment, with engaging in a pattern of corrupt activity, 30 counts of tampering with records, ten counts of securing writings by deception, six counts of telecommunications fraud, 46 counts of forgery, 35 counts of theft by deception, theft beyond the scope of the owner's consent, and six counts of money laundering ("the corrupt activity case").

{¶10} After two days of trial in the murder-conspiracy case, appellant plead guilty in both cases, which were consolidated in the trial court. In the murder conspiracy case, appellant pled guilty to four counts of intimidation of Detective Cesareo and Judge Matia, and one count of retaliation against Judge Matia. In the corrupt activity case, appellant pled guilty to engaging in a pattern of corrupt activity, tampering with records, forgery, felony theft, uttering, securing writings by deception, and telecommunications fraud.

{¶11} In the murder conspiracy case, the court sentenced appellant on each of four counts of intimidation to five years in prison, each term to run concurrently to the others. The court also sentenced him to five years on the retaliation count, to be served consecutively with the intimidation counts, for a total of ten years. In the corrupt activity case, the court sentenced appellant to ten years for engaging in a pattern of corrupt activity, five years for tampering with records, 18 months for forgery, one year for theft, 18 months for uttering, five years for securing writings by deception, and 18 months for telecommunications fraud. The prison terms imposed for forgery, theft, uttering, and telecommunications fraud were to be served concurrently to each other and concurrently to the terms imposed for engaging in a pattern of corrupt activity, tampering with records, and securing writings by deception. The terms for engaging in a pattern of corrupt activity,

4

tampering with records, and securing writings by deception were to be served consecutively to each other, for a total of 20 years in prison, and consecutively to the prison term in the murder conspiracy case, for an aggregate total of 30 years in prison.

{¶12} Appellant filed a direct appeal, and this court affirmed his conviction in *State v. Dudas*, 11th Dist. Lake Nos. 2006-L-267 and 2006-L-268, 2007-Ohio-6739, discretionary appeal not allowed at 118 Ohio St.3d 1409, 2008-Ohio-2340 ("*Dudas I* ").

{¶13} Following appellant's sentence, he filed multiple pro se motions and appealed their denial by the trial court. In *State v. Dudas*, 11th Dist. Lake No. 2007-L-074, 2007-Ohio-6731 ("*Dudas II* "), this court affirmed the trial court's denial of appellant's motion to require the state to return his laptop computer and his personal and business files.

{¶14} In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-140 and 2007-L-141, 2008-Ohio-3262 ("*Dudas III* "), this court affirmed the trial court's dismissal of appellant's first petition for postconviction relief.

{¶15} In *State v. Dudas*, 11th Dist. Lake No. 2007-L-169, 2008-Ohio-3261 ("*Dudas IV* "), this court affirmed the trial court's denial of appellant's motion to compel two victims of his theft scheme to return his property.

{¶16} In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-170 and 2007-L-171, 2008-Ohio-3260 ("*Dudas V* "), this court affirmed the trial court's denial of appellant's Civ.R. 60 motion for relief from judgment.

{¶17} In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-081 and 2008-L-082, 2008-Ohio-7043 ("*Dudas VI* "), this court affirmed the trial court's denial of appellant's first motion to withdraw his guilty plea.

5

{¶18}  In *State v. Dudas*, 11th Dist. Lake Nos. 2007-L-189 and 2007-L-190, 2008-Ohio-6983 ("*Dudas VII*"), this court affirmed the trial court's denial of appellant's petition to return all seized contraband from law enforcement officials.

{¶19}  In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-078 and 2008-L-079, 2009-Ohio-1003 ("*Dudas VIII*"), this court affirmed the trial court's denial of appellant's request for production of documents pursuant to Civ.R. 34 and his "investigative demand against state."

{¶20}  In *State v. Dudas*, 11th Dist. Lake Nos. 2008-L-109 and 2008-L-110, 2009-Ohio-1001 ("*Dudas IX*"), this court affirmed the trial court's denial of appellant's motion to quash the indictment.

{¶21}  In *State v. Dudas*, 11th Dist. Lake Nos. 2009-L-072 and 2009-L-073, 2010-Ohio-3253 ("*Dudas X*"), this court affirmed the trial court's denial of appellant's motion to void judgment and dismiss indictment.

{¶22}  In *State v. Dudas*, 11th Dist. Lake No. 2010-L-002, 2010-Ohio-6442 ("*Dudas XI*"), this court affirmed the trial court's denial of appellant's second motion to withdraw his guilty plea.

{¶23}  In *State v. Dudas*, 11th Dist. Lake No. 2010-L-003, 2010-Ohio-6576 ("*Dudas XII*"), this court affirmed the trial court's denial of appellant's third motion to withdraw his guilty plea.

{¶24}  In *State v. Dudas*, 11th Dist. Lake No. 2010-L-092, 2011-Ohio-4883 ("*Dudas XIII*"), this court affirmed the trial court's denial of appellant's "motion to compel state and trial court to honor legal contract."

{¶25} In *State v. Dudas*, 11th Dist. Lake No. 2010-L-093, 2011-Ohio-5102 ("*Dudas XIV* "), this court affirmed the trial court's denial of appellant's fourth motion to withdraw his guilty plea.

{¶26} In *State v. Dudas*, 11th Dist. Lake No. 2011-L-093, 2012-Ohio-2121 ("*Dudas XV* ") and 2011-L-094, 2012-Ohio-2122 ("*Dudas XVI* "), this court affirmed appellant's resentencing, which corrected a technical error relating to post-release control.

{¶27} Appellant's next appeal, *State v. Dudas*, 11th Dist. Lake Nos. 2013-L-048 and 2013-L-049, 2014-Ohio-4292 ("*Dudas XVII* "), was based on an affidavit allegedly signed by Harmon in 2012, in which Harmon purportedly recanted previous statement implicating appellant in the plot to murder Judge Matia. Appellant argued this constituted newly discovered evidence entitling him to withdraw his plea. Specifically, the affidavit stated that in September 2005, Harmon attended a meeting with Assistant Cuyahoga County Prosecutor Dan Kasaris; Cuyahoga County Common Pleas Judges Timothy McGinty and David Matia; and Cuyahoga County Sheriff's detectives, and that during this meeting all in attendance conspired to and ultimately did create a recording of a conversation between Harmon and another inmate, Daniel Whitehead, in which Whitehead, impersonating appellant, made incriminating statements that made it appear as if appellant admitted his involvement in the murder plot. On appeal, this court affirmed the trial court's denial of appellant's fifth motion to withdraw his guilty plea, denied his second petition for post-conviction relief, and affirmed the trial court's April 26, 2013 order warning appellant and his present or future counsel that "the filing of bad faith, frivolous,

7

Case Nos. 2021-L-115, 2021-L-116

unsubstantiated, and/or repetitious motions will incur disciplinary and/or contempt sanctions, including financial sanctions."

{¶28} In *State v. Dudas*, 11th Dist. Lake No. 2019-L-095, 2020-Ohio-1323 (*Dudas XVIII*), this court affirmed the trial court's denial of appellant's seventh motion to withdraw his guilty pleas.

{¶29} On September 29, 2021, appellant filed a motion entitled "Jus Necessitatis Motion Due to Sixth Amendment and Brady Violations," which the trial court struck sua sponte pursuant to its April 26, 2013 order. It is from that decision that appellant brings the instant appeal, assigning two errors for our review. The first states:

{¶30} The trial court erred and abused its discretion in sua sponte striking Appellant's Jus Necessitatis Motion from the record.

{¶31} The underlying motion in the instant appeal alleged that appellant's constitutional right to counsel was violated because Harmon, a fellow inmate, was acting as an agent of the state to elicit incriminating statements from appellant without his counsel present. The motion assumes as true the assertions appellant previously made; namely, that the statements were fraudulently fabricated or elicited. Appellant's "Jus Necessitatis" motion requests, inter alia, the trial court hold a hearing in order for him to further elaborate why the judgment should be "overruled and reversed."

{¶32} Initially, we must classify appellant's motion, in order to determine the standard of review. *State v. Goodman*, 11th Dist. Trumbull No. 2009-T-0068, 2010-Ohio-407, ¶13. Appellant's motion is entitled a Jus Necessitatis motion. Black's Law Dictionary defines "jus necessitatis" as "[a] person's right to do what is required for which no threat of legal punishment is a dissuasion. This idea implicates the proverb that necessity knows no law (necessitas non habet legem), so that an act that would be objectively understood

8

as necessary is not wrongful even if done with full and deliberate intention."  JUS NECESSITATIS, Black's Law Dictionary (11th ed. 2019).  The application of this idea to appellant's motion is unclear.

{¶33}  "Courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, ¶12.  "Where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds*, 79 Ohio St.3d 158, 160 (1997), syllabus.  In fact, "[w]ith the exception of an appeal, a petition for postconviction relief is 'the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case.'" *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, ¶15, quoting R.C. 2953.21(K).  *See also State v. Lewis*, 11th Dist. Lake No. 2021-L-047, 2021-Ohio-4264, ¶16.

{¶34}  Similar to the reclassifications of motions in *Goodman, supra,* and *Schlee, supra,* the motion relevant to this appeal was filed subsequent to appellant's direct appeal; claimed his constitutional right to counsel was violated; and prayed that the judgment against him be vacated and reversed. Consequently, we treat this appeal as one from a petition for postconviction relief pursuant R.C. 2953.21. *See Schlee, supra,* at ¶12, and *Goodman, supra,* at ¶15.

{¶35}  An appellate court reviews a trial court's determination whether to grant or deny a petition for postconviction relief for abuse of discretion.  *State v. Appenzeller*, 11th Dist. Lake No. 2007-L-175, 2008-Ohio-6982, ¶19. The term "abuse of discretion" is one

9

of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶36} In *Dudas XVII,* this court upheld the trial court's April 26, 2013 order, which stated in pertinent part:

> {¶37} The defendant is hereby placed on notice and warned that he shall not file any further pro se requests to withdraw his guilty pleas, petitions for post-conviction relief, * * * or any similar requests by any other names, or requests for reconsideration of the denial of any such motions, * * * or any other bad faith, frivolous, unsubstantiated, and/or repetitious motion or action. The court will, sua sponte, strike such filing(s) from the record.

{¶38} In upholding this order, this court noted that the order did not prohibit appellant from making any future pro se filings, but ordered him not to make any more repetitious, unsubstantiated, frivolous, and/or bad faith motions. This court further noted that "[w]hile appellant has the right to access the courts of this states, '[t]his right of access * * * does not include the right to abuse the judicial processes and we believe it is within the inherent authority of this court to prevent such abuses * * *. Further, in light of appellant's history of frivolous filings, the trial court had the authority to caution attorneys representing him to refrain from involving themselves in such activity." *Dudas XVII, supra,* at ¶112-113, quoting *State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs.,* 100 Ohio App.3d 592, 600 (8th Dist.1995).

{¶39} At issue in the appeal at bar is whether the trial court abused its discretion in striking this motion as violative of the April 26, 2013 warning against filing "repetitious, unsubstantiated, frivolous, and/or bad faith motions." We conclude the trial court did not err.

10

Case Nos. 2021-L-115, 2021-L-116

{¶40} This is appellant's third petition for post-conviction relief following his direct appeal. Appellant's latest motion reiterates arguments made in previous motions and appeals, particularly *Dudas III* and *Dudas XVII*; to wit: that he is innocent, was coerced into pleading guilty, and that Harmon and others fraudulently fabricated or elicited incriminating statements that he put a hit on Judge Matia. This motion repackages these concepts as a violation of his Sixth Amendment right to counsel.

{¶41} In addition to reiterating arguments previously made, appellant's third petition for post-conviction relief was not timely made. R.C. 2953.21(A)(2)(a) provides in pertinent part:

{¶42} [e]xcept as otherwise provided in section 2953.23 of the Revised Code, a petition * * * shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * * [.]

{¶43} R.C. 2953.23 provides two exceptions to the 180-day time period for filing. Subsection (A)(1) provides the first exception and states that in order to entertain a petition filed after the expiration of the 180-day time period or a second or successive petition for similar relief, both of the following must apply:

{¶44} (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code * * *, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

{¶45} (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *[.]

11

{¶46} The second exception, R.C. 2953.23(A)(2), relates to a DNA testing exception not applicable in the subject appeal.

{¶47} In *Dudas XVII*, this court denied his second petition for post-conviction relief, in large part because it was untimely made. This court determined:

> {¶48} [t]he record shows appellant failed to meet the two-prong test of R.C. 2953.23 in order to obtain relief under his successive petition. First, the record shows he was not unavoidably prevented from discovering the information contained in Harmon's 2012 affidavit. In fact, appellant has repeated the same story contained in that affidavit in support of numerous motions he has filed since 2006.

> {¶49} * * *

> {¶50} Further, appellant failed to prove the second prong of the R.C. 2953.23 test, namely, that, but for constitutional error at trial, no reasonable jury would have found him guilty. Appellant did not go to trial and did not prove any constitutional error; instead, he pled guilty. *Dudas XVII* at ¶60, 66.

{¶51} This court also noted that the record reflects that during his guilty plea hearing and colloquy, appellant admitted as true the facts the prosecutor stated would be proved at trial in both the murder conspiracy case and the corrupt activity case. This court concluded that "[t]he evidence thus supported the trial court's finding that appellant failed to meet the test in R.C. 2953.23 and thus was not entitled to post-conviction relief." *Duas XVII, supra,* at ¶74.

{¶52} Likewise, appellant's latest motion fails to meet the two-prong test of R.C. 2953.23. First, appellant could have raised the argument that his Sixth Amendment right to counsel was violated in a prior motion or appeal. Second, he has failed to prove that "no reasonable factfinder" would have found him guilty but for a constitutional error. Thus, appellant's third petition for post-conviction relief was not timely made and the trial court

12

was not required to consider the petition or hold a hearing on the issues raised. R.C. 2953.21(D) and (F).

{¶53} Furthermore, even if appellant's motion was not repetitive and was timely made, appellant's arguments are nevertheless barred by res judicata. Under this doctrine, "a defendant is precluded from 'raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial' or on direct appeal." *State v. Lett*, 11th Dist. Lake No. 2017-L-169, 2018-Ohio-2351, ¶19, quoting *State v. Hobbs*, 11th Dist. Lake No. 2010-L-064, 2011-Ohio-1298, ¶39. "'Constitutional issues that have been or could have been litigated before conviction or on direct appeal * * * cannot be considered in postconviction proceedings under the doctrine of res judicata.'" *State v. Mike*, 11th Dist. Trumbull No. 2007-T-0116, 2008-Ohio-2754, ¶5, quoting *State v. Gegia*, 11th Dist. Portage No. 2003-P-0026, 2004-Ohio-1441, ¶34.

{¶54} Accordingly, we find the trial court did not abuse its discretion in finding that appellant's arguments in his latest motion were repetitious, unsubstantiated, frivolous, and/or made in bad faith. As such, the trial court did not err by sua sponte striking the motion from the record.

{¶55} Appellant's first assigned error is without merit.

{¶56} His second states:

{¶57} The use of a state agent to elicit incriminating statements from a defendant who has invoked his right to counsel, and failure to disclose the actor's status as a state agent, violates the defendant's right to counsel, and right to due process of law, rendering any resultant conviction constitutionally infirm.

13

**{¶58}** Because the instant appeal is from the decision to strike the motion, not from a decision of the merits of the motion, appellant's second assigned error, which asks this court to reach the merits of the stricken motion, is overruled. *See State v. Gontmakher*, 11th Dist. Lake No. 12-182, 1988 WL 55457, *3, citing *Kalish v. Trans World Airlines*, 50 Ohio St.2d 73 (1977) (An appellate court "will not consider a question not presented, considered or decided by a lower court."). *See also State v. Ware*, 6th Dist. Huron No. H-99-025, 2000 WL 426209, *1; *State v. Hess*, 8th Dist. Cuyahoga No. 109603, 2021-Ohio-579, ¶5.

**{¶59}** However, even if we were to review the merits of appellant's motion, he would not prevail. "The right to counsel under the Sixth Amendment is violated when the state's agent engages the accused in conversation designed to uncover incriminating information *about the charges pending against him*." (Emphasis added.) *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶77.

**{¶60}** Even assuming as true that Harmon was acting as a state agent, at the time appellant and Harmon spoke in 2005, the record shows that no charges pertaining to the threats made against Judge Matia and others had yet been filed, thus no right to counsel had yet attached in what would become the murder conspiracy or corrupt activity cases. *See State v. Mills*, 62 Ohio St.3d 357, 370 (1992), quoting *State v. Broom*, 40 Ohio St.3d 277, 293-294 ("'The Sixth Amendment right to counsel attaches only when adversarial proceedings are initiated against an individual for a particular incident by way of indictment, information, arraignment, or preliminary hearing.'"); *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) ("The Sixth Amendment right to counsel is offense specific * * *.).

14

{¶61} For the reasons set forth herein, the judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case Nos. 2021-L-115, 2021-L-116